IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER MICHAEL TERRY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN COLVIN, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) | Case No. 12-03447-CV-REL-SSA |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Michael Terry seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) made an erroneous finding at step two of the sequential evaluation; (2) did not make a proper residual functional capacity (RFC): (3) did not make a proper finding at step five of the sequential evaluation; and (4) did not make a proper credibility analysis. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## I.  BACKGROUND

On January 26, 2010, plaintiff filed his current set of applications for disability benefits (Tr. 160-75) and supplemental security income benefits (Tr. 176-82) alleging that he has been disabled since November 26, 2006 (Tr. 105-14, 115-121).[1] Plaintiff's disability stems from a combination of physical and mental impairments (Tr. 233).

This is plaintiff's third set of applications for disability benefits and supplemental

---

[1] As to his claim for disability benefits under Title II of the Act, plaintiff's date last insured is December 31, 2011 (Tr. 206-09).

security income benefits. The first claims were filed on October 31, 2003, and alleged disability beginning on July 31, 2003. These claims were denied at the initial level on March 20, 2004, and ultimately dismissed by an ALJ for abandonment on June 23, 2004. Plaintiff did not pursue his appellate rights on these claims. The second claims were filed on December 15, 2006, and alleged disability beginning on November 26, 2006. These claims were denied at the initial level on July 9, 2007, denied by an ALJ's decision on October 30, 2009, and finally denied on review by the Appeals Council on January 28, 2011. Plaintiff did not pursue his appellate rights on these claims (Tr.188- 91).[2]

On April 20, 2010, plaintiff's current applications were denied at the initial level (Tr. 98-102). On June 29, 2011, a hearing was held before the ALJ (Tr. 42-88). On July 13, 2011, the ALJ found that plaintiff is not disabled as defined in the Act (Tr. 28-41). On August 1, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-3). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, provide for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of

---

[2] In his July 13, 2011 decision, the ALJ found that *res judicata* applied to the period through October 30, 2009. Accordingly, the ALJ found that the period under consideration began on October 31, 2009 (Tr. 12). On appeal. plaintiff does not challenge this determination.

2

and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. and 416.901, et seq. The five-step sequential

evaluation process used by the Commissioner is outlined in 20 C.F.R. §§ 404.1520 and 416.920 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

   Yes = not disabled.
   No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

   No = not disabled.
   Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

   Yes = disabled.
   No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

   No = not disabled.
   Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

   Yes = disabled.
   No = not disabled.

## IV. THE RECORD

The record includes the testimony of plaintiff; John Chike Anigbogu, M.D., a medical expert-physical; Glen Frank Sternes, Ph.D., a medical expert-psychological; and Karen Nielsen, Ph.D., a vocational expert. In addition, documentary evidence was admitted at the June 29, 2011 hearing.

### A. ADMINISTRATIVE REPORT

The record includes the following report showing plaintiff's earnings for the years 1994 through 2006:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|

| 1994 | $ 1,829.66 | 2001 | $12,959.69 |
| 1995 | 5,622.94 | 2002 | 20,739.32 |
| 1996 | 7,899.48 | 2003 | 9,518.17 |
| 1997 | 13,610.53 | 2004 | 15,275.13 |
| 1998 | 5,999.97 | 2005 | 12,788.83 |
| 1999 | 5,583.71 | 2006 | 11,857.88 |
| 2000 | 6,531.92 | | |

(Tr. 198).

**B.   SUMMARY OF MEDICAL RECORDS**

As summarized by plaintiff and the Commissioner, the medical evidence reveals clinical signs and laboratory findings of several physical and mental impairments.

**C.   SUMMARY OF TESTIMONY**

At the June 29, 2011 hearing, testimony was taken from plaintiff; Dr. Anigbogu, a medical expert-physical; Dr. Sternes, a medical expert-psychological; and Dr. Nielsen, a vocational expert.

**1.   Plaintiff's testimony**

Plaintiff testified his biggest problem is that he cannot concentrate, cannot focus, is easily distracted, and cannot remember information (Tr. 48). Plaintiff also stated that both his hips hurt so much that sitting for long periods of time is "not very pleasant" (Tr. 49). Plaintiff also reported hand problems, panic attacks, daily headaches, and diabetes (Tr. 49-52).

Plaintiff stated that he attends college and is studying chemical engineering (Tr. 54). Plaintiff said that he transferred from a technical school where he passed classes in calculus, chemistry, linear algebra, and English (Tr. 55, 59). Plaintiff testified that he spends time with classmates (Tr. 51). Plaintiff reported he receives vocational rehabilitation funds from the State of Missouri (Tr. 56-57).

Plaintiff testified that lives alone and drives a car to run errands (Tr. 56). Plaintiff denied using illegal drugs or drinking alcohol (Tr. 57-58).

**2.     Medical experts' testimony**

Dr. Anigbogu testified that plaintiff was involved in a 2006 motor vehicle accident in which plaintiff sustained a significant head injury, which required extensive rehabilitation (Tr. 61-62). Dr. Anigbogu noted that plaintiff has been treated for diabetes, hypertension, and carpal-tunnel syndrome (Tr. 61-63). Dr. Anigbogu opined that plaintiff's conditions neither meet nor equal any Listing (Tr. 64). Dr. Anigbogu opined that, with plaintiff's documented medical impairments, he could perform light work but with repetitive handling limited to not more than 66 percent of the time (Tr. 64-65, 68).

Dr. Sternes described plaintiff's cognitive/emotional problems as a result of a 2006 motor vehicle accident. The expert also discussed plaintiff's poly-substance abuse (Tr. 70-78) Dr. Sterns opined that plaintiff could perform work that involved simple instructions and minimal interaction with others (Tr. 78-79).

**3.     Vocational expert testimony**

Dr. Nielsen, a vocational expert, testified at the request of the ALJ.

Dr. Nielsen classified plaintiff's past relevant work as including dishwasher, cook preparer, and maintenance worker performed at a medium level and either unskilled or semi-skilled (Tr. 80).

The ALJ posed a hypothetical question with a limitation to light work (Tr. 80). The hypothetical individual could understand, remember, and carry out simple instructions, respond appropriately to supervisors and usual work situations, and deal with changes in a routine work setting with only occasional contact with co-workers, supervisors, or the public. However, such individual could engage in active repetitive manipulation only 66 percent of the time during an eight-hour workday. While the expert excluded a return to plaintiff's past relevant work due to

6

the exertional limitations, she opined that the hypothetical individual could perform light-unskilled jobs such as an office cleaner, a photocopy-machine operator, and a parking lot attendant (Tr. 81-84).

On further questioning, the expert opined that the hypothetical individual would not be permitted to repeatedly miss more than two to three days of work. The expert opined that such an individual would also be unable to perform the identified jobs if he or she had marked limitations in several cited work-related tasks caused by a mental impairment.(Tr. 85-86).

## V. FINDINGS OF THE ALJ

ALJ Donald J. Willy entered his decision on July 13, 2011. The ALJ found that plaintiff has not engaged in substantial gainful activity since November 26, 2006, the alleged disability onset date (Tr. 14). The ALJ found that plaintiff's severe impairments include diabetes mellitus, arthralgias, history of drug and alcohol abuse, and status post brain injury due to an alcohol-related motor vehicle accident (Tr. 15). The ALJ found that no impairment meets or equals the severity requirements of a Listing (Tr. 15-19). The ALJ found that plaintiff retains the ability to perform light work requiring active repetitive manipulation up to 66 percent of the time during an eight-hour workday, and could understand, remember, and carry out simple job instructions with only occasional contact with supervisors, co-workers, and the public (Tr. 19-21). While finding that plaintiff could not return to any of his past relevant work (Tr. 22), the ALJ concluded that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 22-23). Therefore, the ALJ decided that plaintiff is not disabled (Tr. 23).

## VI. ANALYSIS

### A. STEP TWO

Plaintiff first argues that the ALJ erred when he found that plaintiff's severe impairments include only diabetes mellitus, arthralgias, history of drug and alcohol abuse, and status-post

7

brain injury. Plaintiff argues that he has other severe impairments including an anxiety disorder, panic disorder, chronic headaches, bilateral carpal-tunnel syndrome, and chronic pain syndrome. In response, the Commissioner argues the ALJ properly considered all of plaintiff's potentially severe impairments. The Commissioner notes that the chronic pain syndrome is subsumed in the arthralgias; that the ALJ discussed a CT scan that showed no source for the headaches; and most importantly, that the ALJ considered the impact on the plaintiff's RFC of all of his impairments including the anxiety disorder/panic attacks and carpal-tunnel syndrome.

At step 2 of the sequential evaluation, plaintiff must have either a severe medically determinable physical or mental impairment that meets the duration requirement of § 404.1509, or a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).

In determining whether an individual's physical or mental impairment or combination of impairments is of sufficient medical severity that it could be the basis of eligibility under the law, the ALJ should consider the combined effect of all of the individual's impairments without regard to whether each impairment, if considered separately, would be of sufficient severity. If the ALJ finds a medically severe combination of impairments, the combined impact of the impairments must be considered throughout the disability process. 20 C.F.R. §§ 404.1523 and 416.923.

SSR No. 2003-02p states that any impairment is considered severe when it significantly limits an individual's physical or mental abilities to do basic work activities. An impairment that is not severe must be a slight abnormality, or a combination of slight abnormalities, that has no more than a minimal effect on the individual's ability to do basic work.

It does not matter if the ALJ finds an impairment is severe or not as long as the RFC includes the impairment. Here, although the ALJ found that plaintiff's anxiety disorder and panic attacks are not severe, the judge devoted a considerable amount of his decision to a

discussion of the medical evidence as it relates to plaintiff's mental status. When evaluating whether plaintiff has an impairment that meets the severity requirements of the Listings, the ALJ specifically cited both Listing 12.02 on organic mental disorder and Listing 12.06 on anxiety disorder (Tr. 18). While the focus of the ALJ's discussion was plaintiff's recovery from his 2006 closed-head injury, many of the parameters do not discriminate as to the source of deficits. For example, memory and concentration measurements do not consider the source of the deficits; rather, those modalities consider the cognitive ability. Here, the ALJ's RFC included non-exertional limitations caused by plaintiff's mental impairments, e.g., limitations to simple work with little interpersonal contact. Although the ALJ found a medically determinable headache impairment, the ALJ's RFC cognitive limitations are equally applicable to a headache impairment.

As noted by the Commissioner, the ALJ discounted plaintiff's complaints of carpal-tunnel syndrome through discussion of the applicable medical evidence; nevertheless, the ALJ limited plaintiff to light work with repetitive manipulation up to 66 percent of the time.

I find that the ALJ"s failure to classify the impairments cited by plaintiff as severe was inconsequential because the judge's RFC includes the work-related limitations attributable to the cited impairments.

**B.**     **RFC ASSESSMENT**

Plaintiff's next argument is that the ALJ's RFC assessment is improper. First, plaintiff argues that the ALJ failed to provide the RFC in the proper form because he did not indicate the restrictions plaintiff has in his ability to climb, balance, stoop, kneel, crouch, crawl, reach, handle, or finger. The Commissioner responds by observing that the ALJ found plaintiff could perform light work with the manipulation restriction after having first reviewed all of the medical evidence and medical opinions, and cited the relevant agency regulations defining light work.

9

The Commissioner notes that the demands of light work are specific and well known.

The Eighth Circuit stated that an ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted); 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. Although formulation of the RFC is part of the medical portion of disability adjudication, it is not based only on "medical" evidence but, instead, is based on all the relevant and credible evidence in the record. McKinney, 228 F.3d at 863. Assessing a claimant's RFC is not solely a "medical question." Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

The ALJ makes the final determination of a claimant's RFC. Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall, 274 F.3d at 1217 (citing Anderson, 51 F.3d at 779).

At the hearing, plaintiff's counsel had an opportunity to question the medical experts about their opinions. Counsel's questions to the medical expert-physical were centered on the witness's qualifications. Counsel did not ask any questions about postural or manipulative limitations (Tr. 67-69). Additionally, counsel did not ask any questions of the medical expert-psychological (Tr. 79).

Plaintiff's counsel was also provided an opportunity to question the vocational expert. Although the questioning included limitations to occasional reaching, handling, and fingering, counsel's focus was on the marked work-related limitations caused by mental impairments. Counsel asked no questions about other postural or manipulative limitations (Tr. 85-86).

By finding that plaintiff is able to perform a full range of light work with limitations on active and repetitive manipulation, the ALJ incorporated the applicable postural and manipulative limitations into his RFC. Although the ALJ could have articulated his opinion more clearly, this is not fatal to his decision. See Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) ("We will not set aside an administrative finding based on an 'arguable deficiency in opinion-writing technique' when it is unlikely it affected the outcome.") (quoting Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)).[3]

Plaintiff next argues that the ALJ failed to give proper weight to the medical opinions in the record. In response, the Commissioner argues the ALJ, after considering the evidence as a whole, gave some weight to the opinions by treating sources, but gave greater weight to the opinions of the two medical experts who testified as the hearing. The Commissioner argues that both the medical experts and the ALJ incorporated many of the treating physicians' limitations into their final RFCs.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment - specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. Social Security Ruling (SSR) 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a

---

[3] I note that on October 30, 2009, a different ALJ found that plaintiff had a RFC for a wide-range of light work (Tr. 35-40). In his July 13, 2011 decision, the now-current ALJ found that *res judicata* applies to the October 30, 2009 decision (Tr. 12). This is a significant finding because most of plaintiff's current complaints originate from a November 26, 2006 motor-vehicle accident in which plaintiff, who was intoxicated, ran his car into a tree at high speed. As a result of the accident, plaintiff sustained multiple injuries, including a closed-head injury that required extensive rehabilitation. The October 30, 2009 decision focused on the November 2006 motor-vehicle accident, the injuries sustained therein, and plaintiff's recovery from the accident; and found plaintiff was not disabled. The Appeals Council denied plaintiff's request for review of the October 2009 decision, and plaintiff (represented by the same law firm

source who has not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

An ALJ " 'is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)).

On June 3, 2009, Steven D. Langguth, M.D., completed a *Medical Source Statement-Mental* form, and stated that plaintiff is not significantly limited in seven basic work-related areas, is moderately limited in 13 basic work-related areas, is markedly limited in zero basic work-related areas, and is extremely limited in zero basic work-related areas (Tr. 447-48). The physician also completed a *Medical Source Statement-Physical* form, and stated that plaintiff retains the ability to perform a RFC for sedentary to light work (Tr. 449-50).

On May 17, 2011, Leticia Alaniz, M.D., completed a *Medical Source Statement-Mental* form, and stated that plaintiff is not significantly limited in seven basic work-related areas, is moderately limited in 11 basic work-related areas, is markedly limited in two basic work-related areas, and is extremely limited in zero basic work-related areas (Tr. 562-63). Dr. Alaniz also completed a *Medical Source Statement-Physical* form, and stated that plaintiff retains the ability to perform a wide range of light work (Tr. 560-61).

At the hearing, Dr. Anigbogu opined that plaintiff retains the ability to perform light work, except plaintiff can only manipulate 66 percent of the time (Tr. 60-69).

At the hearing, Dr. Stearns testified that plaintiff retains the ability to work at simple jobs that require little interaction with others (Tr. 69-79).

---

as here) did not pursue his appellate rights.

The ALJ gave greater weight to the opinions of the medical experts who testified at the hearing and lesser weight to the opinions of Dr. Langguth and Dr. Alaniz, because the medical experts had available to them the totality of the overall objective medical record and heard plaintiff's testimony (Tr. 21). The ALJ discussed the medical evidence and the testimony of the medical experts in detail. The ALJ considered plaintiff's testimony and found the testimony to be less than credible. The ALJ discussed plaintiff's daily activities such as attending college, lifting weights, and living independently.

As noted by the Commissioner, Dr. Langguth's opinions were considered by the previous ALJ in October 2009, and only given some weight (Tr. 38). Nevertheless, the previous ALJ found that plaintiff was able to perform a wide-range of light work, that plaintiff was able to perform other jobs that exist in significant numbers in the national economy, and that plaintiff was not disabled (Tr. 28-41).

Although plaintiff focuses on Dr. Alainz' non-exertional limitations caused by his mental impairments, the ALJ observed that some of the physician's limitations lack any basis in the medical evidence (e.g., never hear and occasional speak). These unsubstantiated limitations detract from the doctor's reliability.

Nevertheless, the ALJ did not ignore either treating doctor's opinion. Instead, he used the treating physicians' opinions as a basis for the RFC, and gave ample justification for his modifications.

Finally, plaintiff argues that the ALJ failed to base his RFC on substantial medical evidence. The Commissioner responds that the ALJ based the RFC on the evidence as a whole

including the testimony of the medical experts, the objective medical record, the treating sources' opinions, plaintiff's daily activities, the treatment modalities, and plaintiff's credibility.

The ALJ's provided a thorough discussion of the medical evidence, both at step three and when assessing the RFC. The ALJ questioned the medical experts, and they provide detailed reasons for their opinions, citing to specific medical records. The ALJ discussed plaintiff's daily activities, treatment modalities, and credibility, and incorporated the opinions of the treating doctors into the RFC when reliable.

An ALJ's RFC must include the effects of all impairments, whether severe or non-severe. Therefore, the ALJ's inclusion of the 66 percent manipulation restriction and limitation to light work was appropriate - they are caused by carpal-tunnel syndrome and arthralgias.

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a claimant's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013).

The administrative regulations do not require a plaintiff to be symptom-free in order to be found not disabled. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity). Even though a plaintiff

has been prescribed antidepressant drugs, this is not evidence that the mental impairment was disabling. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the claimant is disabled).

In summary, I find the ALJ properly assessed plaintiff's RFC.

**C.     STEP FIVE**

Plaintiff next argues that the ALJ's hypothetical question posed to the vocational expert failed to encompass all of plaintiff's relevant impairments. Plaintiff maintains the ALJ's RFC in the hypothetical was not consistent with the ALJ's RFC in his decision. In response, the Commissioner states that the vocational expert's testimony was based on the ALJ's complete RFC finding and therefore valid.

The burden of production shifts to the Commissioner at step five to produce vocational evidence of other work claimant can perform. However, the Commissioner is not required at step five to reestablish or prove the RFC formulated at step four. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).

Plaintiff specifically argues that the ALJ stated that plaintiff was restricted to light unskilled work with the limitations implied by the medical experts, and instead the judge should have included a detailed RFC in his hypothetical to the vocational expert, (Tr. 80).

It is permissible for the ALJ to consider limitations detailed elsewhere. See Buckner v. Astrue, 646 F.3d 549, 561 (8th Cir. 2011) (hypothetical was sufficient where the ALJ "asked the VE to consider the restrictions noted in [medical] report."). What is important is that the RFC must be articulated with adequate specificity so that I and others reviewing the hypothetical question need not speculate as to its parameters. As noted by the Commissioner,

there was discussion of the 66 percent manipulation limitation by the medical expert, the ALJ, and the vocational expert (Tr. 81-83). Similarly, there was discussion between the ALJ and the vocational expert as to the limitations imposed by plaintiff's mental impairments (Tr. 83-85). Although plaintiff's counsel had the opportunity at the hearing to object to or seek a clarification of hypothetical question, he did neither - thereby suggesting that at the time everyone knew and understood the underlying assumed facts (Tr. 85-86).

I find that the RFC implied in the hypothetical question is consistent with the RFC contained in the ALJ's decision.

### D. CREDIBILITY

Finally, plaintiff argues that the ALJ improperly discounted plaintiff's credibility. Plaintiff principally focuses on the ALJ's finding that plaintiff's daily activities are inconsistent with the allegations. In response, the Commissioner states that the ALJ based his credibility finding upon several factors including (1) plaintiff's vigorous activities of daily living, (2) the objective medical evidence, (3) the treatment records, and (4) plaintiff's non-compliance with treatment.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The ALJ, however, must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on

the record as a whole. Robinson v. Sullivan, 956 F.2d at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

As discussed elsewhere, the ALJ and the medical experts devoted considerable time to evaluating plaintiff's medical record. Although they recognized that plaintiff has several severe medical problems, they concluded that the medical evidence does not support the level of disability alleged.

On questioning by the ALJ at the hearing, plaintiff admitted that he is a college student, lives independently, lifts weights, performs household chores, drives, grocery shops, socializes with classmates, and handles his own finances. Although plaintiff requires assistance in some of his daily activities and takes longer to perform these activities, plaintiff engages in numerous activities that are inconsistent with his alleged disability.

Plaintiff testified that he is receiving assistance from Missouri Vocational Rehabilitation Services and hopes to become a chemical engineer. I doubt that Missouri Vocational

17

Rehabilitation Services and plaintiff would devote their time, energy, and resources toward achieving this goal unless there was a reasonable expectation of successful employment in a job that most certainly would require more exertional and non-exertional demands than plaintiff's alleged capacity would allow for.

Although plaintiff denied any recent alcohol or illicit drug use, the experts cited medical records that contradict plaintiff's testimony. The ALJ also cited other examples of non-compliance with treatment and/or failure to pursue treatment modalities that would reduce, if not control, several of plaintiff's symptoms.

I find substantial evidence supports the ALJ's determination that plaintiff is less than fully credible.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

 /s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

March 12, 2014
Kansas City, Missouri